IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                                    Case No. 2:17-cr-227

Janay Ruiz

OPINION AND ORDER

By judgment entered on November 29, 2018, defendant was sentenced to concurrent terms of incarceration of forty-six months on Count 1, conspiracy to commit wire fraud in violation of 18 U.S.C. §371, Count 2, making false, fictitious or fraudulent claims in violation of 18 U.S.C. §287, Count 3, structuring transactions in violation of 31 U.S.C. §5324(a)(3), and Count 4, identity theft in violation of 18 U.S.C. §1028(a)(7). The sentence also included concurrent three-year terms of supervised release and a restitution obligation of $1,165,101.19. The defendant reported to begin serving her sentence on January 15, 2019. The Bureau of Prisons ("BOP") reports that her projected release date is April 21, 2022. See https://www.bop.gov/inmateloc/ (last visited April 8, 2021).

On September 25, 2020, defendant filed a motion for compassionate release from imprisonment under 18 U.S.C. §3582(c)(1)(A) based on the COVID-19 pandemic. Doc. 42. Counsel was appointed to represent the defendant. On November 13, 2020, counsel filed a notice stating that she would not be supplementing defendant's motion because defendant had not yet exhausted her administrative remedies, and that she had advised defendant on how to complete the exhaustion process. See Doc. 46. The government also noted that defendant had not exhausted her administrative remedies. Doc. 48. On December 2, 2020, defendant's motion was denied without prejudice. Doc. 49.

On December 28, 2020, defendant filed additional motions for compassionate release. Docs. 50 and 51. On January 19, 2021, her attorney filed a notice indicating that she would be filing a supplemental motion. Doc. 53. Defendant filed another pro se motion on March 1, 2021. Doc. 55. Counsel for defendant filed a supplemental motion on March 54, 2021. Doc. 56.

On March 25, 2021, the government filed a response in opposition to the motion. Doc. 57. The government acknowledged that defendant appeared to have exhausted her administrative remedies, but argued that she failed to show an extraordinary or compelling reason warranting compassionate release, and that early release was unwarranted under the statutory factors in 18 U.S.C. §3553(a). The court will therefore address defendant's request for a sentence reduction on the merits, and will consider all of her previous motions.

I. Standards for Compassionate Release

Under §3582(c)(1)(A)(i), the court can reduce a sentence under §3582(c)(1)(A) if the court finds that "extraordinary and compelling reasons warrant such a reduction[.]" §3582(c)(1)(A)(i). District courts have full discretion to define what constitutes an "extraordinary and compelling" reason. See United States v. Jones, 980 F.3d 1109, 1111 (6th Cir. 2020). The court must also consider the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable. §3582(c)(1)(A). If, after weighing the §3553(a) factors, the court decides that the motion is well taken, the court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of

imprisonment)[.]" §3582(c)(1)(A). The grant of compassionate release is at the discretion of the court. United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

Section 3582(c)(1)(A) also requires that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" §3582(c)(1)(A). The government correctly argues that the defendant's reasons for a sentence reduction do not fall within any of the categories discussed in the policy statements contained in the United States Sentencing Guidelines, §1B1.13 and Application Note 1 to that section. However, the Sixth Circuit has held that the policy statements contained in §1B1.13 do not apply to cases in which an inmate files a motion for compassionate release, and that district courts have full discretion to define what constitutes an "extraordinary and compelling" reason without consulting the policy statement. See Jones, 980 F.3d at 1111. Therefore, the court will not base its decision on the policy statements.

II. Reasons for Compassionate Release

A. Defendant's Health Concerns

Defendant submits that she should be released due to her medical concerns. Defendant, who is now 34 years old, argues that she is at increased risk of serious illness if she contracts COVID-19 due to the fact that she is obese. The Presentence Investigation Report ("PSR") stated that defendant is 4' 10" tall. A medical record dated January 15, 2021, reported that defendant weighed 149 pounds. Doc. 56, p. 9. The government indicates that this results in a body mass index ("BMI") of 31.1 kg/m². According to the Centers for Disease Control ("CDC"), persons with obesity,

3

that is, a BMI greater than or equal to 30kg/m² and less than 40kg/m², are at an increased risk of severe symptoms if they contract COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (last visited April 8, 2021). Defendant is just above the threshold for increased risk.

However, the medical records do not report any adverse physical problems specifically linked to the defendant's weight. See United States v. Tranter, 471 F. Supp.3d 861, 865 (N.D. Ind. July 8, 2020)(noting that BMI is "a notoriously blunt tool" with clinical limitations, including its inability to differentiate between excess fat, muscle and bone mass, and that defendant had not identified any current medical issues resulting from his obesity, indicating that it has little adverse effect on his overall health). A BOP document dated November 17, 2020, stated that defendant was classified as CARE1 I (healthy or simple chronic care) and was cleared for food service. Doc. 50, Ex. C. A BOP record indicated that a general adult medical examination on February 19, 2020, was without abnormal findings. Doc. 50-1, p. 95. The record includes certificates indicating that defendant participated in a 5K walking program on November 11, 2019, and half marathon/10K/5K events on July 20, 2019, and March 8, 2020. Doc. 50, pp. 71, 85, 95. The government has also submitted BOP records indicating that defendant received her first Moderna COVID-19 vaccine on March 11, 2021, and that she was scheduled to receive the second vaccine on April 8, 2021. Docs. 57-2 and 57-3. This significantly mitigates against any potential threat from COVID-19.

Defendant also contends that compassionate release is

4

warranted due to her mental condition. She has submitted records describing psychological counseling she received for depression and anxiety from September, 2015, through November, 2015, following her delivery of a stillborn baby and her receipt of notification that her criminal activities were being investigated. See Doc. 50-1. However, the medical documents in the record indicate that her next visit to her therapist was not until November 1, 2018, shortly before her sentencing hearing. Doc. 50-1, p. 23. Her therapist noted that she had not seen the defendant for some time, and that defendant requested a letter of some kind from the therapist for her court appearance, expressing the hope that a letter would provide some basis for leniency from the court. This suggests that defendant's Post Traumatic Stress Disorder ("PTSD") was not causing her significant problems.

Defendant states that she has not been receiving any mental health treatment, claiming that she has only had one psychological evaluation while in the institution. The judgment shows that the court did not recommend to the BOP that defendant receive mental health treatment while incarcerated; rather, participating in mental health counseling at the direction of the probation officer is a condition of defendant's supervised release. The BOP's decision denying defendant's request for compassionate release noted that it was determined that defendant's PTSD was not terminal or debilitating. Doc. 57-1, p. 6. Although the record does not include any BOP counseling records, the institution was aware of defendant's mental health issues, as she was classified as CARE1 - mental health. Doc. 42-3, p. 2. Another record noted the PTSD diagnosis. Doc. 50-1, p. 95. Defendant has been able to

5

participate in mental health-related programs, including an 8-hour group therapy session entitled "Trauma in Life," a course from April to June of 2019 entitled "Art of Healing," and a "Mind, Body, Spirit Workshop" on May 5, 2019. Doc. 50, pp. 89, 97, 111.

The court has considered all of the defendant's health complaints, and concludes that they do not constitute an extraordinary and compelling reason for her early release.

B. Rehabilitation While Incarcerated

Defendant has presented evidence concerning her efforts at rehabilitation. The rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for compassionate release. See 28 U.S.C. §994(t)("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). However, rehabilitation may be considered along with other circumstances in deciding whether extraordinary and compelling reasons for early release exist. See United States v. Daley, 484 F.Supp.3d 1171, 1175 (M.D. Fla. 2020). Defendant notes that as of November 17, 2020, she had completed at least 40 classes. Doc. 50, Ex. C. This record also indicated that defendant is employed in food service and has received satisfactory evaluations. No disciplinary infractions are noted. While commendable, this record is not extraordinary. However, the court will consider this information along with the other circumstances advanced by defendant.

C. Needs of Defendant's Children

Defendant also argues that her early release is warranted due to the needs of her children and their stress due to her incarceration. Her younger daughter is almost four years old and

6

resides with defendant's husband. Defendant's older daughter is now 13 years of age. Records indicate that she resides with her grandmother. Doc. 50-1, p. 48. The older daughter was referred to counseling after expressing thoughts of suicide at school. Doc. 50, PAGEID 409. This counseling session occurred on February 26, 2018, prior to the commencement of defendant's incarceration on January 15, 2019. The record indicates that the daughter reported that she made a comment about killing herself at school because she was being bullied by boys who were making mean comments and throwing things at her, and that defendant planned to send her to another school. The daughter's other counseling records span from July, 2019, through September, 2019. Doc. 50-1, pp. 35-74. These sessions reflect a diagnosis of major depressive disorder, but the daughter denied having any suicidal ideations. It is not unusual for the incarceration of a parent to result in the inmate's children experiencing separation anxiety and stress. The circumstances reflected in these records, while unfortunate, are not extraordinary.

D. Conclusion

The court finds that the above circumstances relied on by defendant, considered both individually and in combination, do not arise to the level of an extraordinary or compelling reason for a reduction of defendant's sentence.

III. §3553(a) Factors

The court must also address the applicable §3553(a) factors. The offenses in this case were serious. According to the PSR, from 2012 to 2015, defendant participated in scheme to defraud the Department of Defense by supplying inferior and non-complying

parts. When two of defendant's companies were debarred from participating in government contracts, defendant circumvented this sanction by creating four additional corporations in the name of friends and relatives. This resulted in a two-level enhancement of her sentencing range under the Guidelines for the use of sophisticated means and a two-level enhancement for the violation of the debarment order. Defendant also started two of these companies using the identification information of her demented grandmother and opened bank and credit card accounts with this information, resulting in another two-level enhancement. Defendant received a two-level enhancement for an offense involving the conscious or reckless risk of death or serious bodily injury due to the fact that the parts at issue were critical application items essential to weapons system performance or operation or the preservation of the life or safety of armed services personnel. By supplying defective parts, defendant's actions put the lives of military personnel at risk.

Defendant also received a two-level enhancement for being an organizer, leader, manager or supervisor. Defendant was the decision maker for the companies. She brought friends and relatives into the fraudulent scheme. She obtained the majority of the proceeds, used company bank accounts and credit cards for her personal use, and directed the development and operation of all her companies. Her conduct resulted in a total loss of $2,158,647.61 to the Department of Defense. Her restitution obligation is $1,165,101.19.

As to the history and characteristics of the defendant, the PSR reported that defendant was raised in a middle-class family and

8

had a good upbringing. She had no prior criminal record. She graduated from high school and has a Bachelor of Arts degree in psychology. She was employed from 2009 through 2012 at a company where she learned how to engage in defense contracting. From September of 2015 through her sentencing, she was employed at a hospital as an accounts payable coordinator earning over $16 per hour. As the government has noted, defendant had the capability of engaging in legitimate employment, but chose instead to embark on an elaborate scheme to defraud the Department of Defense. The defendant's rehabilitation efforts while in prison, noted above, have also been considered.

Defendant's Guideline range was 87-108 months. Defendant received a substantial benefit from her plea agreement, which included a binding sentence agreement for a sentence in the range of 27-46 months. Defendant has now served approximately 27 months, or approximately 59%, of her 46-month sentence. Defendant will receive the benefit of good-time credit, and will have served a little over 39 months, less than half the bottom of the Guideline range, as of her anticipated release date of April 21, 2022.

The court finds that a reduced sentence would not be sufficient to reflect the seriousness of the defendant's offenses, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from more crimes by the defendant. The court concludes that the §3553(a) factors warrant denying defendant's motion for a reduced sentence. Even assuming, arguendo, that defendant's health conditions and the other circumstances relied on by defendant, considered together, are sufficient to constitute an "extraordinary and compelling reason"

9

for a sentence reduction, that reason is outweighed by the statutory factors which militate against defendant's early release.

IV. Conclusion

In accordance with the foregoing, defendant's motions for compassionate release (Docs. 42, 50, 51, 53, 55 and 56) are denied.

Date: April 12, 2021             s/James L. Graham
                                James L. Graham
                                United States District Judge